ISIDORE SCHEINBERG et al., Respondents, v. BEATRICE SCHEINBERG, Appellant, Impleaded with Another.

278

(Argued October 16, 1928; decided November 20, 1928.)

*Jay Leo Rothschild* and *Louis Rivkin* for appellant. Equity should not grant specific performance to plaintiffs who come with unclean hands and seek to reap the fruits of an unfair, unconscientious, sharp and illegal bargain. (*Michigan Pipe Co.* v. *Fremont Ditch,* 111 Fed. Rep. 284; *Unckles* v. *Colgate,* 148 N. Y. 529; *Warren* v. *Banning,* 67 Hun, 649; 140 N. Y. 227; *Bascomb* v. *Beckwith,* L. R. 8 Eq. 100; *York* v. *Searles,* 97 App. Div. 331; 189 N. Y. 573; *Champlain Stone & Sand Co.* v. *State,* 66 Misc. Rep. 434; 142 App. Div. 94; *Dempsey* v. *O'Rourke,* 156 N. Y. Supp. 925; *Stokes* v. *Stokes,* 155 N. Y. 581; *Peters* v. *Delaplaine,* 49 N. Y. 362; *Gotthelf* v. *Stranahan,* 138 N. Y. 345; *Carpenter* v. *Carpenter,* 10 N. Y. Supp. 486; *Margraf* v. *Muir,* 57

N. Y. 155.) If a contract be infected and induced by fraud it is sufficient that there was fraud as to a material fact, although it may not have been the sole inducement to the agreement. (*Morgan* v. *Skiddy*, 62 N. Y. 319; *Delano* v. *Rice*, 23 App. Div. 327; *Smith* v. *Countryman*, 30 N. Y. 656; *Stuart* v. *Lester*, 49 Hun, 58.)

*Maurice Z. Bungard* and *Hyman Grill* for respondents. The doctrine of unclean hands has no application in this case. (*Swartzlander* v. *Swartzlander*, 219 App. Div. 682; *Yonkers Fur Dressing Co.* v. *Royal Ins. Co.*, 247 N. Y. 435; *Dunham* v. *Griswold*, 100 N. Y. 24; *Wehrum* v. *Kuhn*, 61 N. Y. 623.)

Pound, J. Plaintiff Louis Scheinberg is the husband of defendant Beatrice Scheinberg. The other plaintiffs are brother and sisters of Louis. In March, 1923, Beatrice Scheinberg obtained a judgment of separation from her husband for cruel and inhuman treatment. At that time she was the owner of the real estate involved in this action. Her equity therein is now of the value of $84,000. She had received title thereto from her husband in 1913 as a gift.

Prior to the judgment of separation, an action had been brought by the mother of Louis Scheinberg to impress a trust upon the real property. She died and the action was continued by her heirs at law. On the trial, Louis Scheinberg was a witness for the plaintiffs. The complaint was dismissed. Judgment of the Trial Term was affirmed by the Appellate Division and an appeal was taken to the Court of Appeals, which was pending at the time the compromise agreement which is the subject of this litigation was entered into.

Soon after the commencement of the litigation last above mentioned an action was brought against Beatrice Scheinberg by a man named Lipset to foreclose a mortgage for $8,000 on a portion of her real property involved

herein. It was defended on the ground that the mortgage was given for record purposes for the convenience of the husband and that Lipset was conspiring with him to enforce the mortgage. The complaint was dismissed on plaintiff's default.

In December, 1921, a petition in bankruptcy was filed against Beatrice Scheinberg. The proceedings were resisted on the ground that the claims of creditors were fictitious and were controlled by her husband. The trial judge in this action said in his opinion that many if not all of the alleged loans were inventions of the husband and those under his control, but held that the question was not directly before him. That the husband did control all these proceedings is evident from the settlement agreement that followed.

On and before July 9, 1924, Beatrice Scheinberg was in danger of losing her property in one or all of these proceedings. The income therefrom was in the hands of receivers in the foreclosure proceedings and in the bankruptcy proceedings. Although she had thus far been successful in the legal battle the end was not in sight. She was without funds to support herself and pay lawyers. Her husband had proved himself to be a relentless and formidable antagonist. Overtures had been made to her for a settlement. Her own lawyers were advising her that the risk was serious. Under these circumstances, she entered into a contract of settlement with plaintiffs. The agreement recites the pending appeal in the action to impress a trust on the real property and an agreement to settle and discontinue that action. It provides for the payment of $40,000 to Beatrice Scheinberg, $10,000 on the execution of the agreement and $30,000 on or before September 2, 1924 (but the funds in the hands of the receiver were to be applied to this payment). Beatrice Scheinberg agrees to convey the real property in suit to the plaintiffs herein, or to their nominees, and the agreement recites that the deed thereof is deposited in escrow

with defendant Max Monfried to be delivered by him when the plaintiffs perform the agreement on their part. Plaintiffs agree to obtain releases from the creditors or alleged creditors of Beatrice Scheinberg and to cause the bankruptcy proceedings to be discontinued. Beatrice Scheinberg agrees to surrender her claim for alimony under the decree of separation and to assign to the plaintiffs or their nominees all money in the hands of the receiver upon compliance by the plaintiffs with the terms of the compromise agreement.

Some delay in performance followed. Beatrice Scheinberg had meanwhile become satisfied that she had been coerced into an inequitable contract and refused to proceed with the settlement. This action for specific performance was then begun. Defendant answered the complaint alleging duress and undue influence and counterclaimed for rescission. The theory of the trial justice was that as Beatrice Scheinberg knew what she was doing when she entered into the settlement agreement and was represented by experienced counsel she was not " in a legalistic sense " overreached and on this theory he made his findings in favor of plaintiffs without passing on the requests of counsel to find in substance that the agreement was, by reason of the background of duress by circumstances, in fact unfair, unconscionable and inequitable and not to be specifically enforced. The court reached the conclusion that the settlement was proper as matter of law.

The Appellate Division modified the judgment by striking out the provision of the settlement agreement waiving alimony and as thus modified, affirmed it.

This is an action in equity for the discretionary remedy of specific performance of a contract. In 1903 in *Beasley* v. *T. & P. Ry. Co.* (191 U. S. 492, 497) HOLMES, J., said: " To compel the specific performance of contracts still is the exception, not the rule." Courts of equity refuse to enforce harsh and unfair bargains. If moral

coercion produces a contract; if it is executed under practical compulsion; if one party acts unfairly and the other yields to the pressure of circumstances, equity will refuse specific performance even though in law the contract would be enforced.

The facts of each particular case of this character should be considered and dealt with on the merits. If the court is of the opinion that it is unconscientious for a person to avail himself of his legal advantage, equity will not attach its sanction to the transaction. (*Forstmann* v. *Joray Holding Co.*, 244 N. Y. 22.) It has often been said in substance: " While a court of equity exercises a discretion regulated upon judicial grounds, it is not compelled, and it will refuse, to aid one whose appeal to it offends its conscience." (*Unckles* v. *Colgate*, 148 N. Y. 529, 532.)

While the literal application of maxims of equity may not be pushed to extremes and while a court of equity, rhetorically styled one of conscience and righteousness, is governed by fixed principles, established doctrines and well-settled rules rather than by the chancellor's own sense of right conduct (*Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538, 546; *Jacobs* v. *Morange*, 47 N. Y. 57), this case is brought well within the principles established for the guidance of the so-called judicial conscience, if the facts are as alleged by the defendant.

Fraud, undue influence and duress have legal definitions which are applied in the common-law courts (*Adams* v. *Irving National Bank*, 116 N. Y. 606), but the use of these terms in equity is wider and less precise. Did the husband deal conscientiously, *i. e.*, justly and fairly, with the wife if he set in motion legal proceedings against her without foundation, deprived her of the means to defend herself and then proposed to take advantage of her necessities by offering to settle with her by taking her property worth $84,000 for $20,000 or even for $40,000 and the discontinuance of the legal proceedings? Even

though she knew what she was doing and sought to buy her peace; even though respectable counsel advised her that it was to her best advantage to make such settlement, she was not wholly a free agent. She was the victim of a conspiracy to defraud her of her property. She could not exercise her independent judgment except to her own disadvantage, for it would be a disadvantage to her to be compelled to defend herself in the courts. The taint of coercion and fraud infects the whole transaction.

The respondents stand, in part at least, on the proposition that the unconscionable conduct charged against Louis Scheinberg may be admitted without affecting the right of the plaintiffs to equitable relief because it is not connected with the actual execution of the agreement of settlement. They invoke the proposition that a contract of settlement *if valid in itself* is final and is to be sustained by the court without regard to the validity of the original claim (*Yonkers Fur Dressing Co.* v. *Royal Ins. Co.*, 247 N. Y. 435), but a contract of settlement is not valid in itself, as the basis of an action for specific performance, if it is unfair and was executed under the coercion of moral pressure improperly exercised, even though it is executed with full knowledge of its effect upon the rights of the parties.

The judgment of the Appellate Division and that of the Special Term should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., CRANE, ANDREWS, KELLOGG and O'BRIEN, JJ., concur; LEHMAN, J., not sitting.

Judgments reversed, etc.